UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------

TANYA LOFTIN,

                    Plaintiff,

      v.

THE CITY OF NEW YORK, POLICE OFFICER
JAMES PRIORE, POLICE OFFICER JAVIER
MORA, POLICE OFFICER MANNY SHARMA
and POLICE OFFICER JOHN DOES # 1–5,

                  Defendants.

------------------------------------------------------------

**MEMORANDUM & ORDER**
15-CV-5656 (MKB)

MARGO K. BRODIE, United States District Judge:

      Plaintiff Tanya Loftin commenced the above-captioned action on September 30, 2015,

against Defendants the City of New York and Police Officers James Priore, Javier Mora, Manny

Sharma and John Does #1–5.  (Compl., Docket Entry No. 1.)  Plaintiff's claims arise from an

incident and arrest that occurred on August 7, 2015, where Plaintiff allegedly fought with other

individuals and hit a police officer.  (Second Am. Compl. ("SAC"), Docket Entry No. 16.)

Plaintiff brings claims for false arrest, excessive force, failure to intervene, fabrication of

evidence and municipal liability[1] under 42 U.S.C. § 1983, and claims for false arrest, assault and

battery and vicarious liability under New York state law.  (SAC ¶¶ 24–64.)  Defendants move for

summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (Defs. Mot. for

Summ. J. ("Defs. Mot."), Docket Entry No. 44; Defs. Mem. in Supp. of Defs. Mot. ("Defs.

Mem."), Docket Entry No. 53.)  For the reasons discussed below, the Court grants Defendants'

---

[1]  At a pre-motion conference on September 23, 2016, the Court dismissed Plaintiff's
claim for municipal liability.  (Minute Entry dated Sept. 23, 2016.)

motion for summary judgment as to Plaintiff's section 1983 claim for excessive force and denies Defendants' motion as to Plaintiff's section 1983 claims for false arrest, fabrication of evidence and failure to intervene and New York state law claims for false arrest, assault and battery.

## I. Background

On August 7, 2015, Plaintiff's nephew, Jamel Loftin, was involved in a physical altercation with two other individuals near 784 Belmont Avenue in Brooklyn, New York. (Decl. of Richard Bahrenburg ("Bahrenburg Decl."), Docket Entry No. 45-1; Shontay Loftin Dep. 24:25–25:14, annexed to Bahrenburg Decl. as Ex. F; Arrest Report 1, annexed to Bahrenburg Decl. as Ex. M.) After learning of the altercation, Plaintiff, Jamel Loftin and some members of their family went to the location of the altercation to question the two individuals as to why the altercation occurred. (Pl. Dep. 32:15–20; Docket Entry No. 48-2.) Once they arrived at the location, Plaintiff and her family members began arguing with the two individuals who were involved in the altercation. (Pl. Dep. 32:17–22; Shontay Loftin Dep. 26:21–24.) One of the two individuals was yelling and attempting to fight Plaintiff and her family members, but he was restrained by his mother. (Pl. Dep. 32:17–22; Shontay Loftin Dep. 25:8–14.) A crowd formed to observe the dispute and eventually grew to between fifteen and thirty people. (Shontay Loftin Dep. 26:12–16; Officer Priore Dep. 9:17–18, annexed to Bahrenburg Decl. as Ex. I; Officer Mora Dep. 10:24–11:2, annexed to Bahrenburg Decl. as Ex. J.)

Officers Priore and Sharma were patrolling the neighborhood in their police vehicle when they observed the crowd engaging in what they believed to be a physical dispute. (Officer Priore Dep. 7:8–9:16; Officer Sharma Dep. 6:12–7:18, annexed to Bahrenburg Decl. as Ex. K.) Officers Priore and Sharma observed individuals within the crowd "pushing and shoving each other" and "verbally arguing." (Officer Priore Dep. 13:11–15; Officer Sharma Dep. 13:12–18

17:19–22.)  Before Officers Priore and Sharma approached the crowd, they "called for backup over the radio."  (Officer Priore Dep. 12:8–11.)  Officer Mora and his partner, Officer Thomas Kaminski, responded to the call for backup and proceeded to the location.  (Officer Mora Dep. 8:25–10:2.)

When Officer Mora arrived at the location, he observed a crowd of people "yelling, cursing back and forth, [and] arguing with each other."  (Officer Mora Dep. 10:11–15.)  Officer Mora approached the crowd to attempt to disperse the crowd and subdue the dispute.  (Officer Mora Dep. 10:4–10.)  According to the officers, Officer Mora encountered Plaintiff in the crowd, observed that Plaintiff had a scooter in her hand and instructed her to take a step back because she "was within two feet" of Officer Mora.  (Officer Mora Dep. 22:22–24:10.)  Plaintiff did not respond to Officer Mora's instruction.  (Officer Mora Dep. 24:11–15.)  Instead, Plaintiff continued yelling at other individuals in the crowd.  (Officer Mora Dep. 24:16–22.)  While holding the scooter by its handlebars, Plaintiff raised the scooter to swing it and, in doing so, hit Officer Mora under his chin.[2]  (Officer Mora Dep. 28:10–19, 29:2–14; Officer Priore Dep. 42:23–43:2.)  The officers do not believe that Plaintiff swung the scooter with the intention to hit Officer Mora or any other person.  (Officer Mora Dep. 29:22–30:6; Officer Priore Dep. 43:4–18.)  Immediately after Plaintiff hit Officer Mora with the scooter, Officer Mora took the scooter from Plaintiff and placed her under arrest.  (Officer Mora Dep. 30:20–25.)

According to Plaintiff and Jamel Loftin, Plaintiff was arguing with other individuals in the crowd when she noticed a young woman preparing to swing the scooter at one of Plaintiff's family members.  (Pl. Dep. 32:24–25, 38:2–14, 41:21–42:5; Jamel Loftin Dep. 49:18–25, Docket

---

[2]  Officer Mora suffered a laceration under his chin, but declined any medical treatment for the injury.  (Officer Mora Dep. 30:7–16.)

Entry No. 48-1.) Plaintiff grabbed the scooter from the young woman and immediately thereafter one of the officers grabbed the scooter from Plaintiff. (Pl. Dep. 32:24–33:1; Jamel Loftin Dep. 44:21–45:3, 49:25–50:3.) The officer grabbed the scooter from Plaintiff before she was able to put it down or do anything else with it. (Pl. Dep. 41:10–20; Pl. Decl. ¶ 4, Docket Entry No. 47; Jamel Loftin Dep. 50:1–3.) When the officer grabbed the scooter, it "swung and hit him by accident." (Jamel Loftin Dep. 44:21–45:1, 50:2–5.) After taking the scooter from Plaintiff, the officer instructed Plaintiff to leave the area. (Pl. Dep. 32:1–2.) The officer placed Plaintiff under arrest as she was leaving the area. (Pl. Dep. 33:3–5; Jamel Loftin Dep. 50:8–11.) Plaintiff was unaware that any police officers were present at the location before the officer grabbed the scooter from her. (Pl. Dep. 41:1–6, 43:11–17.) Plaintiff was also unaware that an officer was hit with the scooter until after she had been arrested. (Pl. Dep. 42:22–43:10.)

After her arrest, Plaintiff was placed in a police van for transportation to the police precinct. (Pl. Dep. 47:3–13.) While in the van, Plaintiff's "handcuffs were tight" and she asked Officer Sharma if he could loosen them. (Pl. Dep. 47:13–23.) Officer Sharma told Plaintiff that he would loosen the handcuffs at the precinct. (Pl. Dep. 47:15–16.) Plaintiff was transported to the police precinct, a drive which lasted approximately five minutes. (Pl. Dep. 52:24–53:2.) At the precinct, Plaintiff remained handcuffed for approximately twenty minutes to half an hour, during which time she again informed Officer Sharma that the handcuffs were tight. (Pl. Dep. 53:3–12, 53:24–3.) Plaintiff was arraigned at approximately 11:00 AM the following morning and was subsequently released. (Pl. Dep. 47:7–16, 52:24–53: 2, 53:13–18.) As a result of the tight handcuffs, Plaintiff suffered swelling and "black-and-blue" bruising to her wrists that "was painful for . . . three to four days." (Pl. Dep. 54:4–7, 55:1–6, 55:15–17.) Plaintiff did not seek medical treatment nor did she document her injuries. (Pl. Dep. 54:12–16, 55:9–11, 55:18–20.)

Officers Priore and Sharma completed an arrest report consistent with Officer Mora's account of the events, and indicated that Plaintiff was arrested for reckless assault and disorderly conduct. (Arrest Report 1–3; Officer Mora Dep. 8:25–30:25.) On August 7, 2015, the date of the arrest, Plaintiff was charged with assault in the third degree and reckless endangerment in the second degree in violation of New York Penal Law sections 120.00 and 120.20 respectively, for hitting Officer Mora with the scooter. (Crim. Compl., annexed to Bahrenburg Decl. as Ex. N.) Plaintiff was also charged with disorderly conduct in violation of New York Penal Law section 240.20 for fighting other individuals in the crowd. (Crim. Compl.) In the Criminal Complaint, the State alleged that Plaintiff was "physically fighting" and "wrestling with unapprehended others" and "holding a razor scooter in [her] hand[,] . . . lift[ed] said scooter into the air as if to swing said scooter and . . . hit Police Officer Javier Mora . . . in the chin with said scooter." (Crim. Compl.) Plaintiff appeared in state court on October 22, 2015, at which time the charges were adjourned in contemplation of dismissal pursuant to New York Criminal Procedure Law section 170.55. (Certificate of Disposition, annexed to Bahrenburg Decl. as Ex. O.)

## II.  Discussion

### a.  Standard of review

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Davis v. Shah*, 821 F.3d 231, 243 (2d Cir. 2016); *see also Cortes v. MTA NYC Transit*, 802 F.3d 226, 230 (2d Cir. 2015). The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (first quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010);

and then citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment. *Id.* The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the nonmoving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

### b. Claims against the officers

Plaintiff brings four claims against the officers under section 1983, alleging that the officers (1) violated her Fourth Amendment rights by arresting her without probable cause; (2) violated her Fourth Amendment rights by using excessive force against her by applying unreasonably tight handcuffs; (3) violated her Fourteenth Amendment right to due process by fabricating evidence; and (4) failed to intervene and stop the unconstitutional conduct. (SAC ¶¶ 11–40.) In addition, Plaintiff brings claims against the officers under New York state law for false arrest, assault and battery.[3] (*Id.* ¶¶ 49–61.) Defendants move for summary judgment on all of Plaintiff's claims. (Defs. Mem. 5–18.)

---

[3] Because the analyses of state law claims for false arrest, assault and battery, in substantial part, mirror the analyses of federal claims for false arrest and excessive force, respectively, the Court discusses both the state and federal claims against the officers under the section 1983 framework, noting any differences where necessary. *See Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) ("A [section] 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law."); *Humphrey v. Landers*, 344 F. App'x. 686, 688 (2d Cir. 2009) ("Except for § 1983's requirement that the tort be committed under color of state law, the essential elements of excessive force and state law assault and battery claims are substantially identical." (alterations omitted) (quoting *Posr v. Doherty*, 944 F.2d 91, 94–95 (2d Cir. 1991))).

Under section 1983, individuals may bring a private cause of action against persons "acting under color of state law" to recover money damages for deprivations of their federal or constitutional rights. *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 55 (2d Cir. 2014) (quoting 42 U.S.C. § 1983). To establish a viable section 1983 claim, a plaintiff must show "the violation of a right secured by the Constitution and laws of the United States" and that "the alleged deprivation was committed by a person acting under color of state law." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015) (citations and internal quotation marks omitted).

### i. False arrest claims

Defendants argue that Plaintiff's false arrest claims against Officer Mora fail because Officer Mora had probable cause to arrest Plaintiff for assault in the third degree in violation of New York Penal Law section 120.00(2) based on Plaintiff's reckless conduct in striking Officer Mora with the scooter. (Defs. Mem. 5–8.) Plaintiff argues that Officer Mora lacked probable cause to arrest her because she did not take any action that created a risk of striking Officer Mora with the scooter. (Pl. Mem. of Law in Opp'n to Defs. Mot. ("Pl. Mem.") 2–8, Docket Entry No. 46.)

The Fourth Amendment protects individuals from unreasonable searches and seizures by law enforcement officials.[4] *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). A law enforcement official violates the Fourth Amendment's protections if he or she arrests someone

---

[4] Under New York law, to prevail on a claim of false arrest a plaintiff must show that "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (citing *Broughton v. State of New York*, 37 N.Y.2d 451, 456 (1975)). "A [section] 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law." *Gonzalez*, 728 F.3d at 155.

without probable cause. *Id.* Conversely, "probable cause is an absolute defense to a false arrest claim." *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013) (quoting *Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 139 (2d Cir. 2010)). "A police officer has probable cause for an arrest when he has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime . . . .'" *Swartz v. Insogna*, 704 F.3d 105, 111 (2d Cir. 2013) (quoting *Weyant*, 101 F.3d at 852); *see also Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013). The reviewing court "must consider [only] those facts available to the officer at the time of the arrest and immediately before it." *Stansbury*, 721 F.3d at 89 (alteration in original) (quoting *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006)). The question is whether the facts known to the arresting officer, at the time of the arrest, objectively provided probable cause to support the arrest. *Gonzalez*, 728 F.3d at 155.

Here, Defendants argue that Officer Mora had probable cause to arrest Plaintiff for reckless assault. (Defs. Mem. 13–15.) New York Penal Law section 120.00(2) states that "[a] person is guilty of assault in the third degree when [h]e [or she] recklessly causes physical injury to another person." N.Y. Penal Law § 120.00(2). New York law provides that:

> A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result would occur or that such circumstances exist. The risk must be of such a nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.

N.Y. Penal Law § 15.05(3). Accidental conduct does not establish criminal negligence and therefore does not establish recklessness, as "[r]ecklessness, of course, is a higher or more culpable" state of mind than criminal negligence. *People v. Montanez*, 1 N.Y.2d 53, 56 (1976); *see also People v. Gonzalez*, No. 2015-NY-23186, 2015 WL 7737913, at *3–4 (N.Y. Crim. Ct.

Dec. 1, 2015) (citing *Montanez*, 1 N.Y.2d at 56). "Reckless conduct requires awareness and conscious disregard of a substantial and unjustifiable risk." *People v. Russell*, 91 N.Y.2d 280, 287 (1998) (citing N.Y. Penal Law § 15.05(3)). "[I]f the facts alleged cannot even establish that the defendant failed to perceive a substantial risk of injury, those same facts will, almost invariably, also fail to establish that the defendant was both aware of and disregarded that same type of risk." *Gonzalez*, 2015 WL 7737913, at *4; *see also People v. Briskin*, 3 N.Y.S.3d 1113, 1119 (App. Div. 2015) (holding that recklessness requires "the awareness and corresponding disregard of [] a risk" and "is measured from the defendant's perspective"). Accordingly, to establish probable cause to arrest Plaintiff for assault in the third degree based on hitting Officer Mora with the scooter, Defendants must establish that a reasonable officer would have believed that Plaintiff was "aware of" and "consciously disregarded" the risk that her actions would have caused her to hit Officer Mora with the scooter. *See People v. Brown*, 17 N.Y.3d 863, 865–66 (2011) (holding that reckless assault requires the State to show that the defendant "was aware of and consciously disregarded a known risk" of harm that could result from the defendant's actions).

Here, there are disputed issues of fact as to whether a reasonable officer would believe that Officer Mora had probable cause to arrest Plaintiff for reckless assault. According to Plaintiff, she grabbed the scooter from a young woman who appeared to be preparing to hit one of her family members with the scooter. (Pl. Dep. 32:24–25, 38:2–14, 41:21–42:5; Jamel Loftin Dep. 49:18–25.) Immediately after Plaintiff grabbed the scooter from the young woman, Officer Mora grabbed the scooter from her. (Pl. Dep. 32:24–33:1; Jamel Loftin Dep. 44:21–45:3, 49:25–50:3.) Considering the evidence in the light most favorable to Plaintiff, she did not swing the scooter or take any other action with the scooter due to the immediacy with which Officer Mora

grabbed it from her. (Pl. Dep. 41:10–20; Pl. Decl. ¶ 4; Jamel Loftin Dep. 50:1–3.) Plaintiff was not aware that any police officers were on the scene prior to or at the time when she grabbed the scooter from the young woman. (Pl. Dep. 41:1–6, 43:11–17.) In addition, Jamel Loftin, Officer Mora and Officer Priore all state that it appeared that Plaintiff accidentally hit Officer Mora with the scooter. (Jamel Loftin Dep. 44:21–45:1, 50:2–5; Officer Mora Dep. 29:22–30:6; Officer Priore Dep. 43:4–18.)

Under these circumstances, there are disputed issues of fact as to whether an officer would reasonably believe that there was probable cause to arrest Plaintiff for reckless assault. According to Plaintiff, she was not aware that Officer Mora was within her immediate vicinity. Plaintiff, therefore, could not have been aware that she would hit Officer Mora with the scooter simply by taking the scooter from the young woman. Because the evidence does not establish that Plaintiff was aware of and consciously disregarded the risk that her actions would cause her to hit Officer Mora with the scooter, Officer Mora lacked probable cause to arrest Plaintiff. *See Brown*, 17 N.Y.3d at 865–66 (holding that there was evidence showing that the "defendant acted with criminal negligence when she lifted [a] pot of water from the stove and poured it over [the victim]," but "the evidence does not support the [trial] [c]ourt's conclusion that [the] defendant was aware of and consciously disregarded a known risk that her behavior would cause [the victim's] skin to burn"); *Gonzalez*, 2015 WL 7737913, at *2 (finding that the state failed to set forth allegations sufficient to show that a defendant committed reckless assault where the state only "allege[d] an act that might well have been accidental: defendant struck the complainant with his car"); *cf. People v. Grimaldi*, No. 2015-BX-022132, 2015 WL 5751955, at *4 (N.Y. Crim. Ct. Sept. 28, 2015) (finding that "there is a great likelihood of causing some sort of injury to someone trying to gain entry into a residence when an individual shuts the door on them[, and]

[a] trier of fact could conclude that defendant was simultaneously [] aware of the risk of injury his action created and chose to disregard it" (citation omitted)).  Accordingly, the Court denies Defendant's motion for summary judgment as to the false arrest claim against Officer Mora.

### ii.   Excessive force, assault and battery claims

Defendants move for summary judgment on Plaintiff's federal excessive force claim and state law assault and battery claims.  (Defs. Mem. 9–11, 17.)  Because the existence of probable cause to arrest is not determinative of the federal excessive force claim but is determinative of the state law assault and battery claims, the Court separately discusses the federal and state law claims.

### 1.   Plaintiff fails to establish a disputed issue of material fact as to her federal excessive force claim

Defendants argue that Plaintiff's federal excessive force claim fails because she never complained to the officers that the handcuffs were causing her unreasonable discomfort and her alleged injuries are *de minimis*.  (Defs. Mem. 9–11.)  Plaintiff argues that her excessive force claim survives because she twice informed Officer Sharma that her handcuffs were tight and suffered lasting injuries as a result of the unreasonably tight handcuffs.  (Pl. Mem. 8–12.)

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer" in the course of an arrest.  *Tracy v. Freshwater*, 623 F.3d. 90, 96 (2d Cir. 2010) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  Because the Fourth Amendment's test of reasonableness is one of "objective reasonableness," the inquiry is fact-specific.  *Id*.  The Second Circuit has rejected the adoption of "a *per se* rule that the use of handcuffs in effecting an arrest is always reasonable."  *Soares v Connecticut*, 8 F.3d 917, 921 (2d Cir. 1993); *see also Shamir v. City of New York*, 804 F.3d 553, 557 (2d Cir. 2015) (holding that "excessively tight

11

handcuffing that causes injury can constitute excessive force in violation of the Fourth Amendment").

"To determine whether the handcuffing of an arrestee was reasonable, the handcuffing must be viewed 'in light of the minimal amount of force necessary to maintain custody of [the arrestee].'" *De Michele v. City of New York*, No. 09-CV-9334, 2012 WL 4354763, at *13–14 (S.D.N.Y. Sept. 24, 2012) (citing *Esmont v. City of New York*, 371 F. Supp. 2d 202, 215 (E.D.N.Y. 2005)); *see also Felmine v. City of New York*, No. 09-CV-3768, 2011 WL 4543268, at *19 (E.D.N.Y. Sept. 29, 2011) ("With respect to handcuffing-related uses of force, courts have analyzed the officers' conduct 'in light of the minimal amount of force necessary to maintain custody of the arrestee.'" (alterations and citations omitted)). "[I]n evaluating the reasonableness of handcuffing, a Court is to consider evidence that: 1) the handcuffs were unreasonably tight; 2) the defendants ignored the [plaintiff's] pleas that the handcuffs were too tight; and 3) the degree of injury to the [plaintiff's] wrists." *Lloyd v. City of New York*, --- F. Supp. 3d ---, ---, 2017 WL 1207838, at *14 (S.D.N.Y. Mar. 31, 2017) (citations omitted); *Selvaggio v. Patterson*, 93 F. Supp. 3d 54, 74 (E.D.N.Y. 2015) (citation omitted); *Usvage v. Port Auth. of N.Y. & N.J.*, 932 F. Supp. 2d 575, 592 (S.D.N.Y. 2013) (quoting *Esmont*, 371 F. Supp. 2d at 215); *Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008) (quoting *Esmont*, 371 F. Supp. 2d at 215); *see also Arroyo v. City of New York*, --- F. App'x ---, ---, 2017 WL 1087926, at *2 (2d Cir. Mar. 21, 2017) (holding that an excessive force claim based on handcuffing requires the plaintiff to show that she suffered some "physical injury" and "asked for the handcuffs to be removed").

Viewing the evidence in the light most favorable to Plaintiff, her excessive force claim fails because Plaintiff's injuries are insufficient to establish that the handcuffs were unreasonably tight. Plaintiff asserts that after Officer Mora grabbed the scooter from her, he instructed her to

leave the area and then arrested her.  (Pl. Dep. 32:1–2, 33:3–5.)  Plaintiff was placed in handcuffs and then placed in a police van for transportation to the precinct.  (Pl. Dep. 47:3–13.)  While she was in the van, Plaintiff felt that the "handcuffs were tight" and asked Officer Sharma to loosen them.  (Pl. Dep. 47:13–23.)  Officer Sharma told Plaintiff that he would loosen the handcuffs at the precinct.  (Pl. Dep. 47:15–16.)  Plaintiff was driven to the precinct, where she remained handcuffed.  (Pl. Dep. 52:24–53:3.)  At the precinct, Plaintiff again informed Officer Sharma that her handcuffs were tight, but she remained handcuffed in the same manner for approximately twenty to thirty minutes before the handcuffs were removed.  (Pl. Dep. 53:3–12, 54:1–2, 55:15–17.)  The tight handcuffs caused swelling, "black and blue" bruising and pain to Plaintiff's wrists, which pain "lasted three to four days."  (Pl. Dep. 54:4–7, 55:1–6, 55:15–17.)  Plaintiff did not seek any medical treatment for her injuries.  (Pl. Dep. 54:12–16, 55:9–11, 55:18–20.)

Plaintiff's assertions that the handcuffs were unreasonably tight and that she asked Officer Sharma to loosen the handcuffs satisfy the first two elements of a claim for excessively tight handcuffs.  *See Lynch*, 567 F. Supp. 2d at 468 (finding that "the first two factors support [the] plaintiff's claim that [the] handcuffs were excessively tight [because] [he] testified that the cuffs were too tight . . . [a]nd when he complained to an officer," the officer did not loosen the handcuffs).  But Plaintiff's assertions that she suffered swelling and bruising to her wrists that lasted for three to four days and did not require medical treatment are insufficient to satisfy the injury element of an excessive force claim based on tight handcuffing.  *See Christian v. Kelly*, No. 14-CV-7416, 2016 WL 3162056, at *3 (E.D.N.Y. June 3, 2016) ("Plaintiff references only generalized pain on his left wrist following the arrest and swelling in that same area when he was admitted to [the] [h]ospital two days later.  These minor injuries are routinely rejected . . . as insufficient to support a claim of excessive force." (collecting cases)); *Selvaggio*, 93 F. Supp. 3d

at 74–76 (finding that the "admittedly minimal abrasions or scabs that [the] [p]laintiff reports [lasted for one week] — for which medical treatment was found unnecessary — do not rise to the level of injury that courts in this [C]ircuit have held to satisfy the injury requirement" (collecting cases)); *Lynch*, 567 F. Supp. 2d at 468–69 ("[T]he fact that the tight handcuffing did not cause [the plaintiff] any continuing injury is fatal to the excessive force claim." (collecting cases)); *see also Jackson v. City of New York*, 939 F. Supp. 2d 235, 253 (E.D.N.Y. 2013) ("Injuries held to be *de minimis* for the purposes of defeating excessive force claims include short-term pain, swelling and bruising [and] brief numbness from tight handcuffing . . . ." (internal quotation marks omitted) (quoting *Lemmo v. McKoy*, No. 08-CV-4264, 2011 WL 843974, at *5 (E.D.N.Y. Mar. 8, 2011))); *cf. Usvage* 932 F. Supp. 2d at 596 (finding that the plaintiff "satisfie[d] the injury requirement [because] [he] indicated that he still could not feel the top of his right hand . . . [and] still feels pain and clicking in his wrist"); *Felmine*, 2011 WL 4543268, at *18–19 (finding that the plaintiff satisfied the injury requirement where he asserted that "as a result of the tight handcuffing, he had sore wrists, red marks for a whole month and some degree of bleeding"). Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiff's federal excessive force claim.

### 2. There are disputed issues of material fact as to Plaintiff's state law claims for assault and battery

Defendants argue that Plaintiff's state law claims for assault and battery fail because the officers had probable cause for the arrest. (Defs. Mem. 17.) Plaintiff argues that her state law claims for assault and battery survive, even if the officers applied the handcuffs in a reasonable manner, because the officers lacked probable cause for the arrest. (Pl. Mem. 22–24.)

Under New York law, "assault is an intentional placing of another person in fear of imminent harmful or offensive contact" and a "battery is an intentional wrongful physical contact

with another person without consent." *Green v. City of New York*, 465 F.3d 65, 86 (2d Cir. 2006) (citing *Charkhy v. Altman*, 678 N.Y.S.2d 40, 41 (App. Div. 1998)); *see also United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.*, 994 F.2d 105, 108 (2d Cir. 1993) (internal quotation marks omitted) (citing *Hernandez v. Lattimore*, 612 F.2d 61, 67 (2d Cir. 1979)); *Rucks v. City of New York*, 96 F. Supp. 3d 138, 153 (S.D.N.Y. 2015). If an officer lacks probable cause for an arrest, any force used by the officer in effectuating the unlawful arrest constitutes assault and battery. *See Rucks*, 96 F. Supp. 3d at 153 ("[I]f an arrest is determined to be unlawful, any use of force against a plaintiff may constitute an assault and battery, regardless of whether the forced used would be deemed reasonable if applied during a lawful arrest. In fact, where an arrest is unlawful and without consent, the use of force in an arrest *must* give rise to a claim for assault and battery. " (internal quotation marks omitted) (first quoting *Sulkowska v. City of New York*, 129 F. Supp. 2d 274, 294 (S.D.N.Y. 2001); and then citing *Johnson v. Suffolk Cty. Police Dep't*, 665 N.Y.S.2d 440, 441 (App. Div. 1997))); *Biswas v. City of New York*, 973 F. Supp. 2d 504, 531 (S.D.N.Y. 2013) ("If an arrest is unlawful, an arresting police officer commits a battery when he or she touches the arrestee, including during the application of handcuffs." (citing *Budgar v. State*, 414 N.Y.S.2d 463, 466 (Ct. Cl. 1979))); *Mesa v. City of New York,* No. 09-CV-10464, 2013 WL 31002, at *32 (S.D.N.Y. Jan. 3, 2013) ("In New York, when there is no probable cause for an arrest, all force employed during that arrest is unlawful."); *5 Borough Pawn, LLC. v. Marti*, 753 F. Supp. 2d 186, 201 (S.D.N.Y. 2010) ("[I]f an arrest is determined to be unlawful, any use of force against a plaintiff may constitute an assault and battery, regardless of whether the forced used would be deemed reasonable if applied during a lawful arrest." (quoting *Sulkowska*, 129 F. Supp. 2d at 294)).

Plaintiff asserts that Officer Mora placed her under arrest and handcuffed her without probable cause, constituting assault and battery under New York state law. (Pl. Mem. 22–24; Pl. Decl. ¶¶ 3–4; Pl. Dep. 33:3–5, 41:10–20.) As discussed above, disputed issues of material fact exists as to whether Officer Mora had probable cause to arrest Plaintiff. Therefore, because a reasonable jury could find that Officer Mora lacked probable cause for the arrest, summary judgment is inappropriate on Plaintiff's assault and battery claims stemming from the disputably unlawful arrest. *See Rucks*, 96 F. Supp. 3d at 153; *Biswas*, 973 F. Supp. 2d at 530–31; *5 Borough Pawn, LLC.*, 753 F. Supp. 2d at 201.

### iii.  Fabrication of evidence claim

Defendants argue that the Court should dismiss Plaintiff's fabrication of evidence claim because the information the officers included in the arrest report was accurate. (Defs. Mem. 11–12.) Plaintiff argues that she has established a fabrication of evidence claim because the officers falsely reported that Plaintiff fought with other individuals at the scene of the arrest, falsely reported that she lifted the scooter as if to swing it when she struck Officer Mora and caused a deprivation of her liberty since she was required to attend and remain available for court proceedings relating to the reckless assault charge. (Pl. Mem. 12–20.)

To establish a fair trial claim based on fabrication of evidence, a plaintiff must show that "an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 277 (2d Cir. 2016) (citation omitted); *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997)). Unlike a false arrest or malicious prosecution claim, "probable cause is not a defense to a claim for a denial of the right

to a fair trial" based on the fabrication of evidence. *Garnett*, 838 F.3d at 277 (alteration omitted) (citing *Jovanovic*, 486 F. App'x at 152).

An investigating official may be any governmental actor that investigates alleged criminal activity, which in most cases is a police officer. *See Garnett*, 838 F.3d at 274 ("[A] Section 1983 plaintiff may sue for denial of the right to a fair trial based on a police officer's fabrication of information."); *Ricciuti*, 124 F.3d at 130 ("When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such [] action is redressable in an action for damages under [section] 1983." (citation omitted)). A plaintiff need only produce some evidence showing that the officer's statement or evidence is false or manipulated. *See Garnett*, 838 F.3d at 269–70, 279 (holding that the plaintiff's and the officer's conflicting accounts of the events underlying the charges created an issue of fact as to falsity); *Morse v. Fausto*, 804 F.3d 538, 547 (2d Cir. 2015) (holding that the plaintiff's documents showing that the prosecutor omitted material portions of relevant evidence created an issue of fact on falsity); *Jocks v. Tavernier*, 316 F.3d 128, 138 (2d Cir. 2003) (holding that the plaintiff's testimony that the information was false was sufficient evidence to create an issue of fact as to falsity). Whether the fabricated evidence is likely to influence a jury's decision can be satisfied by showing that the fabricated evidence was material to the prosecutor's case. *See Garnett*, 838 F.3d at 277 (holding that fabricated evidence is material when it may affect "the prosecutor's decision to pursue charges rather than to dismiss the complaint without further action" or could influence "the prosecutor's . . . assessments of the strength of the case"); *Ricciuti*, 124 F.3d at 129–30 (holding that fabricated evidence, such as a confession, is material because it is "almost certain to influence a jury's verdict"). Proof that a police officer forwarded

the fabricated evidence to a prosecutor can be satisfied by direct evidence that the officer gave the evidence to the prosecutor or by other evidence from which it can be inferred that the officer forwarded the fabricated evidence to a prosecutor. *See Morse*, 804 F.3d at 547 (holding that it was clear that the fabricated evidence was forwarded to a prosecutor because the prosecutor used the fabricated evidence during a grand jury proceeding); *Higazy v. Templeton*, 505 F.3d 161, 177–78 (2d Cir. 2007) (holding that there was an issue of fact as to whether a police officer forwarded false information to a prosecutor because it appeared that the prosecutor relied on the false information at the plaintiff's bail hearing).

In addition, a Plaintiff can establish a depravation of liberty through the number of court appearances a plaintiff made post-arraignment, constraints such as bail requirements, a period of incarceration or travel restrictions. *See Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 117 (2d Cir. 1995); *Arbuckle v. City of New York*, No. 14-CV-10248, 2016 WL 5793741, at *10–11 (S.D.N.Y. Sept. 30, 2016) (collecting cases). While the number of times a plaintiff was required to appear before a state court bolsters the plaintiff's claim that the plaintiff's liberty was deprived, a lack of numerous court appearances is not dispositive. *See Burg v. Gosselin*, 591 F.3d 95, 98 (2d Cir. 2010) (holding that "[t]he number of appearances may bear upon whether there was a seizure" rising to the level of a deprivation of liberty). A plaintiff may sufficiently establish a deprivation of liberty when he or she is detained before arraignment, required to be available to reappear before the state court at any time and therefore limited in his or her travel after being released from custody, and makes at least one post-arraignment appearance before a state court. *See Swartz*, 704 F.3d at 112 ("We have consistently held that a post-arraignment defendant who is obligated to appear in court in connection with criminal charges whenever his attendance is required suffers a . . . deprivation of liberty." (internal quotation marks omitted) (quoting *Murphy*

*v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997))); *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 216 (2d Cir. 2000) (holding that a plaintiff established a deprivation of liberty where the conditions of post-arraignment release required him to remain available to return to court and therefore remain in the state); *Norton v. Town of Islip*, No. 12-CV-4463, 2016 WL 264930, at *4 (E.D.N.Y. Jan. 21, 2016) ("[W]hat the Second Circuit found most salient in *Rohman* and *Swartz* was . . . the obligation to return to court whenever an appearance is requested, with its attendant travel restrictions and not the number of post-arraignment court appearances required of the criminal defendant."); *cf. Burg*, 591 F.3d at 98 (holding that "the issuance of a pre-arraignment non-felony summons requiring a later court appearance, without further restrictions, does not constitute a . . . seizure"); *Arbuckle*, 2016 WL 5793741, at *11 (finding that "merely having to respond to orders of the court is insufficient [alone] to allege a deprivation of liberty").

Viewing the evidence in the light most favorable to Plaintiff, she has established a fabrication of evidence claim. According to the Arrest Report completed by Officers Priore and Sharma, Plaintiff was arrested for reckless assault and disorderly conduct because she was "involved in a physical dispute creating an offensive condition . . . [and] did recklessly swing a razor scooter above [her] head striking [Officer Mora]  [and] causing [a] minor laceration to [Officer Mora's] chin." (Arrest Report 1–3.)  Plaintiff was arrested on August 7, 2015, at approximately 6:30 PM. (Arrest Report 1.)  She was transferred to the precinct and then to Central Booking, where she was arraigned at approximately 11:00 AM the following morning. (Pl. Dep. 47:7–16, 52:24–53: 2, 53:13–18.)  The Criminal Complaint charged Plaintiff with reckless assault and disorderly conduct for "physically fighting with unapprehended others . . . [and,] lift[ing] [the] scooter into the air as if to swing [the] scooter, . . . hit[ting] Police Officer Javier Mora . . . in the chin with [the] scooter." (Crim. Compl.)  The Criminal Complaint reflects

that Officer Mora provided some of the information contained in the Criminal Complaint. (Crim. Compl.)  After she was arraigned, Plaintiff was released and appeared before the state court on October 22, 2015, when the State adjourned the charges in contemplation of dismissal. (*See* Pl. Mem. 19; Certificate of Disposition.)  Plaintiff asserts that while the charges were pending, she was required to "remain in the state" to "render [herself] at all times amenable to the orders of the [state] court."  (Pl. Mem. 18.)  Further, Plaintiff avers that on August 7, 2015, she did not "physically fight with any individual, . . . swing or wave a razor scooter over [her] head [or] . . . lift a razor scooter into the air as if to swing the scooter," and therefore, the officers included false information in the Arrest Report and then provided that false information to the District Attorney's Office, as evidenced by the information in the Criminal Complaint which accused her of taking all of these actions.  (Pl. Decl. ¶¶ 3–4; Pl. Mem. 17–20.)

Plaintiff's assertions satisfy the elements of a fabrication of evidence claim.  The officers do not dispute that they are investigating officials as they arrested Plaintiff for the conduct underlying the charges in the Criminal Complaint.  *See Garnett*, 838 F.3d at 274; *Ricciuti*, 124 F.3d at 130.  Plaintiff's assertions that the she did not fight with anyone or swing the scooter creates a disputed issue of fact regarding whether the officers falsified or fabricated the information underlying the charges.  *See Jocks*, 316 F.3d at 138 (holding that the plaintiff's testimony that "the statement written by [the police officer] was false" created an issue of fact even though "there was [] not overwhelming evidence of falsification").  In addition, because the information provided by the officers was the basis for the charges against Plaintiff, the officers' statements influenced the decision of the District Attorney's Office to charge Plaintiff in the Criminal Complaint.  *See Garnett*, 838 F.3d at 277–78 (holding that on officer's allegedly false statements about the plaintiff's actions which gave rise to the charges was information that likely

would influence a state's decision to prosecute the charges). Moreover, based on the similarities between the language in the Arrest Report completed by Officers Priore and Sharma and the language in the Criminal Complaint and the fact that the Criminal Complaint references information provided by Officer Mora, a reasonable jury can infer that the officers forwarded the information to the District Attorney's Office. *See Higazy*, 505 F.3d at 177–78 (holding it appeared that an officer forwarded allegedly false information to a prosecutor because the prosecutor "[a]pparently refer[red]" to the information at the plaintiff's bail hearing); *see also Walker v. City of New York*, 638 F. App'x 29, 33 (2d Cir. 2016) (holding that the plaintiff established that an officer forwarded allegedly false information in an arrest report to a prosecutor based on the similarities between the information in the arrest report and the information in the criminal complaint).

In addition, Plaintiff suffered a deprivation of liberty as a result of the false information because she was arrested, detained for approximately sixteen hours until she was arraigned, subject to being called to reappear in state court while the charges were pending, likely unable to leave the state because she may be called to appear in state court and made a post-arraignment appearance before the state court — the proceeding where the charges were dismissed. *See Swartz*, 704 F.3d at 112 ("We have consistently held that a post-arraignment defendant who is obligated to appear in court in connection with criminal charges whenever his attendance is required suffers a . . . deprivation of liberty." (internal quotation marks omitted) (quoting *Murphy*, 118 F.3d at 947)); *Rohman*, 215 F.3d at 216 (holding that a plaintiff established a deprivation of liberty where the conditions of post-arraignment release required him to remain available to return to court and therefore remain in the state); *Norton*, 2016 WL 264930, at *4 (finding that the plaintiff suffered a deprivation of liberty because the conditions of post-

arraignment release required him to remain available to return to court and therefore remain in the state and he made one post-arraignment court appearance). Accordingly, the Court denies Defendants' motion for summary judgment as to the fabrication of evidence claim against the officers.

### iv. Failure to intervene claims

Defendants argue that the officers cannot be liable for failing to prevent the alleged violations of Plaintiff's constitutional rights because Plaintiff fails to establish that the officers committed any constitutional violations. (Defs. Mem. 11–12.) Plaintiff states that her failure to intervene claims pertain to her false arrest claims and argues that Officers Priore and Sharma may be liable for failing to intervene because she has established that Officer Mora falsely arrested her.[5] (Pl. Mem. 20–22.)

"[L]aw enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (collecting cases)). An officer may be liable for the preventable

---

[5] Plaintiff also argues that the officers are liable for failing to prevent the use of fabricated evidence against her. (Pl. Mem. 21.) Because, as discussed above, viewing the evidence in the light most favorable to Plaintiff, she establishes a fabrication of evidence claim against the officers, the Court dismisses the failure to intervene claim as it pertains to the fabrication of evidence claim since the officers cannot be liable for both committing the constitutional violation and failing to intervene in the constitutional violation. *See Cooper v. Dieugenia*, No. 14-CV-818367, 2017 WL 818367, at *8 (E.D.N.Y. Feb. 27, 2017) ("If a defendant may be liable under a theory of direct participation, there is no claim against that defendant for failure to intervene." (alteration and internal quotation marks omitted) (quoting *Chepilko v. City of New York*, No. 06-CV-5491, 2012 WL 398700, at *8 n.5 (E.D.N.Y. Feb. 6, 2012))); *Case v. City of New York*, --- F. Supp. 3d ---. ---. 2017 WL 571530, at *20 (S.D.N.Y. Feb. 10, 2017) ("[A] defendant cannot be liable for both the underlying constitutional deprivation and a failure to intervene to stop himself from committing that violation." (alteration and internal quotation marks omitted) (quoting *Marom v. City of New York*, No. 15-CV-2017, 2016 WL 916424, at *19 (S.D.N.Y. July 29, 2016))).

harm caused by the officer's failure to intervene during a constitutional violation where the officer "observes the [constitutional violation] and has sufficient time to act to prevent it." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) (citation omitted); *see also Terebesi*, 764 F.3d at 244. However, "[a]n underlying constitutional violation is an essential element of a failure to intercede claim under [section] 1983." *Henry-Lee v. City of New York*, 746 F. Supp. 2d 546, 566 (S.D.N.Y. 2010) (citing *Ricciuti*, 124 F.3d at 129); *see also Wieder v. City of New York*, 569 F. App'x 28, 30 (2d Cir. 2014) ("Because the underlying constitutional claims were properly dismissed, we also affirm the district court's dismissal of plaintiff's failure to intervene claim."); *Levy v. City of New York*, 935 F. Supp. 2d 575, 594 (E.D.N.Y. 2013) ("[T]he failure to intervene claim is contingent upon the disposition of the primary claims underlying [it]." (quoting *Matthews v. City of New York,* 889 F. Supp. 2d 418, 443–44 (E.D.N.Y. 2012))).

As discussed above, because Plaintiff has produced sufficient evidence to create disputed issues of material fact regarding her false arrest claims, the Court denies Defendants' motion for summary judgment as to the false arrest claim. Because Defendants only argue that the Court should dismiss the failure to intervene claim on the basis that Plaintiff fails to establish any underlying constitutional violation, the Court denies Defendants' motion for summary judgment on the failure to intervene in the false arrest claim. *See Simcoe v. Gray*, 577 F. App'x 38, 40 (2d Cir. 2014) (holding that disputed issues of material fact on the underlying constitutional violations created disputed issues of material fact as to failure to intervene claims); *Richardson v. Providence*, No. 09-CV-4647, 2012 WL 1155775, at *4 (E.D.N.Y. Apr. 6, 2012) ("Because [the] defendants' only basis for dismissing [the] plaintiff's claims for failure to intervene . . . is that plaintiff cannot establish a violation of any constitutional right, and this court has found that a material issue of fact exists as to whether plaintiff was unreasonably detained, the [failure to

intervene] claim . . . also cannot be dismissed on this ground."); *see also Riccuiti*, 124 F.3d at 128–29 (holding that a district court erred in granting summary judgment on a plaintiff's failure to intervene claims because based on the evidence, "a reasonable jury could conclude that [the] [o]fficer[s] first stood idly by, refusing to intervene, as [another officer] arrested [the plaintiff] under circumstances indicating a clear lack of probable cause").

### v. Qualified immunity

Defendants argue, in the alternative, that Plaintiff's false arrest claim should be dismissed on the basis of qualified immunity because Officer Mora had at least arguable probable cause to arrest Plaintiff for reckless assault.[6] (Defs. Mem. 13–15.) Plaintiff argues that Officer Mora is not entitled to qualified immunity because, based on Plaintiff's version of the facts, no officer of reasonable competence would believe there was probable cause to arrest Plaintiff.

"Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2014). As to whether the right is clearly

---

[6] Defendants also argue that the officers are entitled to qualified immunity on the excessive force claim. (Defs. Mem. 13, 15–16.) Because as explained above, Plaintiff fails to show that the manner in which the officers applied the handcuffs constituted excessive force and therefore fails to show the officers violated her rights under the Fourth Amendment, the Court does not address whether the officers are entitled to qualified immunity on the excessive force claim. *See Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007) (When a defendant officer . . . invokes qualified immunity to support a motion for summary judgment, a court must first consider [whether] . . . the facts, viewed in the light most favorable to the plaintiff, show that the officer's conduct violate[d] a constitutional right[.] If the answer to this question is no, there is no necessity for further inquiries concerning qualified immunity." (internal quotation marks omitted) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)); *see also Powell v. City of New York*, No. 14-CV-09937, 2016 WL 4159897, at *11 (S.D.N.Y. July 14, 2016) ("There is no need to linger on the qualified immunity analysis in this case, since, as shown above, no constitutional violation can be made out, even on a favorable view of the parties' submissions." (internal quotation marks omitted) (quoting *Saucier*, 533 U.S. at 201)).

established, the "dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 92 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). "Only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established." *Moore v. Vega*, 371 F.3d 110, 114 (2d Cir. 2004). "[T]he relevant question is whether a reasonable officer could have believed [his or her conduct] to be lawful, in light of clearly established law and the information [he or she] possessed." *Id.* at 115 (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). Defendants bear the burden of proof to establish that qualified immunity exists. *Sudler v. City of New York*, 689 F.3d 159, 174 (2d Cir. 2012); *Jackler v. Byrne*, 658 F.3d 225, 242 (2d Cir. 2011). In determining whether an officer is entitled to qualified immunity, the facts must be "taken in the light most favorable to the party asserting the injury." *Loria v. Gorman*, 306 F.3d 1271, 1281 (2d Cir. 2002).

Because "[i]t is firmly established that . . . claims of arrest . . . without probable cause implicate constitutional rights, [] the dispositive issue for purposes of . . . qualified immunity is whether based on the facts as alleged by [the plaintiff], [the officer's] actions were based on probable cause." *Loria*, 306 F.3d at 1281 (citing *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)).

"In the context of a false arrest claim, qualified immunity protects an officer if he had arguable probable cause to arrest the plaintiff." *Myers v. Patterson*, 819 F.3d 625, 632–33 (2d Cir. 2016) (internal quotation marks omitted) (quoting *Garcia*, 779 F.3d at 92). "Arguable probable cause exists if [] it was objectively reasonable for the officer to believe that probable cause existed or [] officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* at 633 (internal quotation marks omitted) (quoting *Escalera v. Lunn*,

361 F.3d 737, 743 (2d Cir. 2004)).  "[A]n officer lacks arguable probable cause and is not entitled to qualified immunity only where no officer of reasonable competence could have made the same choice in similar circumstances."  *Id.* (internal quotation marks omitted) (quoting *Lennon v. Miller*, 66 F.3d 416, 420–21 (2d Cir. 1995)).

As discussed above, there are disputed issues of material fact as to whether a reasonable officer would believe that there was probable cause to arrest Plaintiff for reckless assault.  For the same reasons as set forth above, the Court finds that there are disputed issues of material fact as to arguable probable cause — namely, whether an officer of reasonable competence would believe there was probable cause to arrest Plaintiff for reckless assault.  *See Jenkins v. City of New York*, 478 F.3d 76, 87–88 (2d Cir. 2007) (holding that the police officers were not entitled to qualified immunity on a false arrest claim where the parties disputed the essential facts underlying the probable cause analysis because "'[a]rguable' probable cause should not be misunderstood to mean 'almost' probable cause").  Accordingly, Officer Mora is not entitled to qualified immunity as to the false arrest claim.

### c.  Claims against the City of New York

Plaintiff alleges that, pursuant to the New York common law doctrine of *respondeat superior*, the City of New York is vicariously liable for the officers' actions underlying Plaintiff's state law claims for false arrest, assault and battery.  (SAC ¶¶ 52, 57, 62.)  Defendants argue that the Court should dismiss Plaintiff's claims against the officers but do not specifically address the vicarious liability claims against the City of New York.  (*See* Defs. Mem. 5–18.)  Because vicarious liability claims cannot lie when the underlying claims have been dismissed, the Court understands Defendants to assert that the Court should dismiss the vicarious liability claims if the Court dismisses the underlying claims.  *See Conte v. County of Nassau*, 596 F. App'x 1, 3 (2d Cir. 2014) ("[T]he dismissal of [the plaintiffs'] underlying theories of liability eliminate[s] the

prospect of vicarious liability." (citing *Harsco Corp. v. Segui*, 91 F.3d 337, 339, 349 (2d Cir. 1996))).

Under the New York common law doctrine of *respondeat superior*, an employer may be held liable for the actions of an employee if the employee's actions were foreseeable and within the scope of employment. *See Doe v. Guthrie Clinic, Ltd.*, 710 F.3d 492, 495 (2d Cir. 2013). The doctrine of *respondeat superior* has been extended to cities and police departments, allowing them to be held liable for unconstitutional actions taken by police officers. *See Ackerson v. City of White Plains*, 702 F.3d 15, 22 (2d Cir. 2012); *see also Conte*, 596 F. App'x at 3.

As discussed above, a reasonable jury could find that the officers' actions constituted violations of New York law on false arrest, assault and battery. Therefore, summary judgment is inappropriate on Plaintiff's claims for vicarious liability against the City of New York based on the underlying state law claims for false arrest, assault and battery. *See Ackerson*, 702 F.3d at 22 (holding that an officer's liability on "a state law false arrest claim creates liability for the City . . . under a theory of *respondeat superior*"); *Mesa,* 2013 WL 31002, at *34 ("[U]nder New York state law, municipalities can face liability for claims such as false arrest, assault, and battery under a theory of respondeat superior.").

### III.  Conclusion

For the foregoing reasons, the Court grants Defendants' motion for summary judgment as to Plaintiff's section 1983 claim for excessive force and denies Defendants' motion as to

Plaintiff's section 1983 claims for false arrest, fabrication of evidence and failure to intervene and New York state law claims for false arrest, assault and battery.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: August 21, 2017
Brooklyn, New York