UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

TANYA LOFTIN,

                         Plaintiff,

               v.

THE CITY OF NEW YORK, POLICE OFFICER
JAMES PRIORE, POLICE OFFICER JAVIER
MORA, POLICE OFFICER MANNY SHARMA
and POLICE OFFICER JOHN DOES # 1–5,

                         Defendants.

**MEMORANDUM & ORDER**
15-CV-5656 (MKB)

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

       Shontay Loftin, and her then-minor son, Jamel Loftin[1] commenced the above-captioned action on September 30, 2015. (*See* Compl., Docket Entry No. 1.) On November 30, 2015, Shontay and Jamel, together with Plaintiff Tanya Loftin, filed an Amended Complaint, followed by a Second Amended Complaint on January 23, 2016, bringing claims against Defendants the City of New York and Police Officers James Priore, Javier Mora, Manny Sharma, and John Does #1–5. (*See* Am. Compl., Docket Entry No. 10; Second Am. Compl. ("SAC"), Docket Entry No. 16.) Plaintiffs asserted claims of false arrest, excessive force, failure to intervene, fabrication of evidence and municipal liability[2] under 42 U.S.C. § 1983, and false arrest, assault and battery,

---

[1] On August 25, 2016, Shontay and Jamel Loftin dismissed all claims against Defendants pursuant to a settlement agreement between the parties. (*See* Stip. of Dismissal, Docket Entry No. 37.)

[2] At a pre-motion conference on September 23, 2016, the Court dismissed Plaintiff's claim for municipal liability. (Minute Entry dated Sept. 23, 2016.)

and vicarious liability under New York state law.[3] (SAC ¶¶ 24–64.) Shontay and Jamel Loftin settled their claims against Defendants and filed a stipulation of dismissal on August 25, 2016. (Stip. of Dismissal, Docket Entry No. 37.) On March 30, 2023, Plaintiff accepted Defendants' offer of judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure, in the amount of $15,001 plus reasonable attorneys' fees, expenses, and costs for her federal claims, in exchange for a release of all claims against Defendants arising from the events giving rise to this action. (Notice of Acceptance of Offer of J., Docket Entry No. 105.) On April 5, 2023, the Clerk of Court entered judgment in favor of Plaintiff. (Clerk's Judgment, Docket Entry No. 106.)

Plaintiff now seeks attorneys' fees in the amount of $155,143.05 for work performed in pursuing her claims. (Pl.'s Mem. in Supp. of Mot. for Award of Att'ys' Fees ("Pl.'s Mem.") 6–7, Docket Entry No. 118.) For the reasons discussed below, the Court grants in part and denies in part Plaintiff's motion, and awards Plaintiff attorneys' fees in the amount of $120,851.75.

**I.   Background**

Plaintiff's claims arose out of an August 7, 2015 altercation between Plaintiff and members of her family and several unidentified individuals, which resulted in Priore, Sharma, and Mora responding to the scene. (Mem. & Order dated Aug. 21, 2017 at 2–5, Docket Entry No. 54.) Plaintiff was arrested and charged with, among other things, assault in the third degree and reckless endangerment in the second degree in violation of New York's Penal Law. (*Id.* at 5.) Plaintiff appeared in state court on October 22, 2015, at which time the charges were adjourned in contemplation of dismissal pursuant to New York Criminal Procedure Law section 170.55. (*Id.*)

---

[3] By Memorandum and Order dated August 21, 2017, the Court granted Defendants' motion for summary judgment as to Plaintiff's claims under section 1983 for excessive force, but denied Defendants' motion as to all other claims. (Mem. & Order, Docket Entry No. 54.)

Plaintiff filed a motion for attorneys' fees on June 27, 2023,[4] seeking a collective award of $155,143.05 for attorneys' fees for work performed in pursuing her claims. (Pl.'s Mem. 6–7.) Defendants opposed Plaintiff's motion on June 29, 2023. (Defs.' Opp'n to Pl.'s Mot. for Att'ys' Fees ("Defs.' Opp'n"), Docket Entry No. 120.) Plaintiff filed a reply in support of her motion on June 29, 2023. (Pl.'s Reply in Supp. of Mot. for Att'ys' Fees ("Pl.'s Reply"), Docket Entry No. 121.)

## II. Discussion

### a. Attorneys' fees

Plaintiff seeks attorneys' fees in the amount $155,143.05, consisting of $116,035.55 in fees for Richard Cardinale; $28,300 in fees for Michael Hueston; and $10,807.50 in fees for Izabel Garcia. (Pl.'s Mem. 6–7.) Plaintiff argues the fees are reasonable because: (1) the attorneys' hourly rates are justified by their experience and qualifications, (*id.* at 3); and (2) contemporaneous time records support the number of hours counsel spent litigating this case, (*id.* at 4–6). Plaintiff also argues that the amount of fees recoverable need not be proportional to the amount of damages a civil rights plaintiff recovers. (*Id.* at 5–6.)

Defendants argue that the proposed hourly rates are not reasonable in light of the attorneys' experience and the limited complexity of this case. (Defs.' Opp'n 3–4.) In addition, Defendants argue that a significant reduction in the hours expended is warranted because counsel have already recovered fees for work done on behalf of Shontay and Jamel Loftin, and because there are several excessive and duplicative billing entries. (*Id.* at 5–10.)

---

[4] Plaintiff initially filed a memorandum of law on June 26, 2023, (Mem. in Supp. of Mot. for Award of Att'ys' Fees, Docket Entry No. 112), but filed another memorandum of law on June 27, 2023, (Pl.'s Mem.). The Court considers only the arguments set forth in the memorandum of law filed on June 27, 2023.

Trial courts are afforded "considerable discretion in determining what constitutes reasonable attorney's fees in a given case." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 151 (2d Cir. 2008); *see also Agudath Isr. of Am. v. Hochul*, No. 22-38, 2023 WL 2637344, at *1 (2d Cir. Mar. 27, 2023) ("We have explained that 'we afford district courts broad discretion in awarding attorneys' fees because they are much closer to the details of each individual case and can better determine what is reasonable and appropriate in the fee calculus for the particular case.'" (quoting *Lilly v. City of New York*, 934 F.3d 222, 234 (2d Cir. 2019))); *Ortiz v. City of New York*, 843 F. App'x 355, 357–58 (2d Cir. 2021) (same); *Pettiford v. City of Yonkers*, 833 F. App'x 893, 895 (2d Cir. 2020) (same). In exercising this discretion, trial courts must "bear in mind *all* of the case-specific variables that . . . courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Lilly*, 934 F.3d at 232 (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008)); *see also Ortiz*, 843 F. App'x at 359 (same). "'[T]he most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff." *Barfield*, 537 F.3d at 152 (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)); *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 606–07 (2d Cir. 2020) (same). Other factors a court should consider include but are not limited to:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Arbor Hill*, 522 F.3d at 184; *see also id.* at 190 (clarifying that district courts should consider,

among others, the factors laid out in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989)); *see also, e.g.*, *Lilly*, 934 F.3d at 230 (same).

Both the Second Circuit and the Supreme Court have held that "the lodestar [method] — the product of a reasonable hourly rate and the reasonable number of hours required by the case — creates a 'presumptively reasonable fee.'" *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill*, 522 F.3d at 183); *see also Agudath*, 2023 WL 2637344, at *1 ("Courts award attorney's fees according to the 'presumptively reasonable fee' (or 'lodestar') method, calculated as the product of the reasonable number of hours worked and a reasonable hourly rate." (citing *Arbor Hill*, 522 F.3d at 183–84)); *Grant v. Lockett*, No. 19-CV-469, 2021 WL 5816245, at *7 (2d Cir. Dec. 8, 2021) ("Courts calculate a presumptively reasonable fee under § 1988 by 'determining the appropriate billable hours expended and setting a reasonable hourly rate, taking account of all case-specific variables.'" (quoting *Lilly*, 934 F.3d at 229–30)). The fee applicant bears the burden of "submit[ting] adequate documentation supporting the requested attorneys' fees and costs." *Fisher*, 948 F.3d at 600 (first citing *N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983) ("All applications for attorney's fees . . . should normally be disallowed unless accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done."); and then citing *McCann v. Coughlin*, 698 F.2d 112, 131 (2d Cir. 1983) ("Fee awards . . . must be made on the basis of adequate documentation.")).

      **i.   Reasonable hourly rate**

Plaintiff seeks hourly rates of $500 for Mr. Cardinale and Mr. Hueston, and $450 for Ms. Garcia. (Pl.'s Mem. 3.) Plaintiff argues the hourly rate for Mr. Cardinale and Mr. Hueston is reasonable because each attorney has over twenty-eight years of experience litigating civil rights

5

and employment cases in the Eastern and Southern Districts of New York. (*Id.*) Plaintiff argues the hourly rate for Ms. Garcia is reasonable because of her experience litigating "numerous civil rights cases, in addition to other areas of law" since the 1990s. (*Id.*)

Defendants argue the requested hourly rates are unreasonable. (Defs.' Opp'n 3–4.) In support, Defendants contend that the proposed rate (1) for Mr. Cardinale and Mr. Hueston should "fall within the range of rates typically awarded to partners in similar cases in this District" in light of the "very limited complexity of this case" and counsel's "comparable experience," (*id.* at 4–5); and (2) for Ms. Garcia is unreasonable because "she is comparatively inexperienced in [section] 1983 cases . . . and thus her rate should fall somewhere in the middle of the range for senior associates," (*id.* at 5).

"The reasonable hourly rate is the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Lilly*, 934 F.3d at 230 (quoting *Arbor Hill*, 522 F.3d at 190); *see also Chaparro v. John Varvatos Enters., Inc.*, No. 21-446, 2021 WL 5121140, at *1 (2d Cir. Nov. 4, 2021) (same). Such rates should be based on rates "prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." *Cruz v. Loc. Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)); *see also Chaparro*, 2021 WL 5121140, at *1 ("[D]etermination of a reasonable hourly rate 'contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel.'" (quoting *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 59 (2d Cir. 2012))). Determination of the prevailing market rates is "an inquiry that may 'include judicial notice of the rates awarded in prior cases and the court's own familiarity with rates prevailing in the

6

district.'" *Chaparro*, 2021 WL 5121140, at *1 (quoting *Townsend*, 679 F.3d at 59); *Spain v. Kinder Stuff 2010 LLC*, No. 14-CV-2058, 2015 WL 5772190, at *8 (E.D.N.Y. Sept. 29, 2015) ("Determination of the prevailing market rates may be based on evidence presented or a judge's own knowledge of hourly rates charged in the community." (first citing *Farbotko v. Clinton Cnty. of N.Y.*, 433 F.3d 204, 209 (2d Cir. 2005); and then citing *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1059 (2d Cir. 1989))). "[T]he 'community' . . . is the district where the district court sits." *Arbor Hill*, 522 F.3d at 190 (citing *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983)).

In what has become known as the "forum rule," courts assess the reasonableness of hourly rates by comparing the rates requested with the prevailing rates charged by attorneys practicing in the district where the court sits. *See Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174–76 (2d Cir. 2009) (discussing forum rule); *see also Chaparro*, 2021 WL 5121140, at *1–2; *Leevson v. Aqualife USA Inc.*, 770 F. App'x 577, 583 (2d Cir. 2019) (noting that district courts have "conclud[ed] that approximately $300 to $450 was a reasonable hourly rate for partners within the Eastern District of New York" (citing *Griffin v. Astro Moving & Storage Co.*, No. 11-CV-1844, 2015 WL 1476415, at *8 (E.D.N.Y. Mar. 31, 2015))); *Bergerson v. N.Y. State Off. of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 290 (2d Cir. 2011); *Saleh v. Pretty Girl, Inc.*, No. 09-CV-1769, 2022 WL 4078150, at *31 (E.D.N.Y. Sept. 6, 2022) ("'[C]ourts in this District have concluded that $200 to $450 per hour is a reasonable hourly rate for partners, $200 to $325 per hour is reasonable for senior associates, and $100 to $200 per hour is reasonable for more junior associates.'" (quoting *Crews v. County of Nassau*, No. 06-CV-2610, 2019 WL 6894469, at *7 (E.D.N.Y. Dec. 18, 2019))); *Aptive Env't, LLC v. Village of East Rockaway*, No. 19-CV-3365, 2022 WL 5434178, at *4 (E.D.N.Y. July 8, 2022) ("[T]here is also precedent within

7

this District awarding rates as high as $600 depending upon the experience of the lawyer and complexity of the matter." (first citing *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, No. 10-CV-2262, 2019 WL 2870721, at *6 (E.D.N.Y. June 18, 2019), *report and recommendation adopted*, 2019 WL 2869150 (E.D.N.Y. July 3, 2019); then citing *United States v. Sixty-One Thousand Nine Hundred Dollars and No Cents*, 856 F. Supp. 2d 484, 494 (E.D.N.Y. 2012))), *report and recommendation adopted*, 2022 WL 4376618 (E.D.N.Y. Sept. 22, 2022). In addition, "district courts should not treat an attorney's status as a solo practitioner as grounds for an automatic reduction in the reasonable hourly rate." *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 97 n.6 (2d Cir. 2006).

### 1. Richard Cardinale and Michale Hueston

Plaintiff seeks an hourly rate of $500 for Mr. Cardinale and Mr. Hueston. Mr. Cardinale is an experienced lawyer who has been practicing in New York for approximately thirty-one years. (Decl. of Richard Cardinale in Supp. of Pl.'s Mot. ("Cardinale Decl.") ¶¶ 3–4, Docket Entry No. 113.) For the last twenty-two years, Mr. Cardinale has run his own practice "concentrating in civil rights litigation, employment law, criminal law and appeals." (*Id.* ¶ 10.) Mr. Cardinale has "tried approximately thirty federal civil cases to verdict" and has appeared in "over 400 cases in the Eastern District," the "vast majority" of which were civil rights and employment cases. (*Id.* ¶¶ 11–12.) Similarly, Mr. Hueston has been practicing law in New York for approximately twenty-eight years. (Decl. of Michael Hueston in Supp. of Pl.'s Mot. ("Hueston Decl.") ¶ 5, Docket Entry No. 114.) For the last twenty-three years, Mr. Hueston has "been in private practice, concentrating in the areas of civil rights and criminal defense." (*Id.* ¶ 10.) Mr. Hueston has tried approximately forty cases to verdict in state and federal courts in New York and has "been counsel in 590 cases involving civil rights, employment, and criminal defense" in the Southern and Eastern Districts of New York." (*Id.* ¶¶ 12–13.)

8

While Mr. Cardinale and Mr. Hueston have significant experience with cases of this nature, Plaintiff's requested hourly rates exceed those typically awarded to attorneys of comparable experience in this District. In addition, Plaintiff's requested rate does not account for the lack of complexity of this case. *See Ortiz v. City of New York*, 843 F. App'x 355, 360 (2d Cir. 2021) (finding no error where district court determined that $300 was a reasonable hourly rate in part because the case was a "very simple [s]ection 1983 action that was not complex and raised no novel issues" (internal quotation marks omitted)); *Lilly*, 934 F.3d at 231 (finding no error in $450 hourly rate where district court concluded that the case was "relative[ly] simpl[e] and . . . that the hourly rate should reflect this lack of complexity" (internal quotation omitted)).

As Plaintiff acknowledges, "although her attorneys are highly experienced, arguably this was not a complex case." (Pl.'s Reply 2.) This action involved claims under section 1983 and state law arising out of a single incident that led to Plaintiff being detained for approximately sixteen hours and making one post-arraignment appearance in state court.[5] Fact discovery in this case was limited[6] and the parties' summary judgment briefing did not raise complex or novel issues of law. Due to the relatively straightforward nature of this action, the Court finds it appropriate to apply a modest reduction to the hourly rates of Mr. Cardinale and Mr. Hueston. *See Smith v. City of New York*, No. 19-CV-6198, 2022 WL 939711, at *4 (E.D.N.Y. Mar. 28,

---

[5] Plaintiff was arrested at approximately 6:30 PM on August 7, 2015, and was released the following morning at approximately 11:00 AM. (Mem. & Order dated August 21, 2017 at 2–4, 19–20.) Plaintiff later appeared in state court on October 22, 2015, where the criminal charges against her were adjourned in contemplation of dismissal. (*Id.* at 4–5.)

[6] Fact discovery was completed approximately seventeen months after Defendants answered the Second Amended Complaint. (*See* Order dated Sept. 18, 2017, Docket Entry No. 61; *see also* Answer, Docket Entry No. 21.) A review of counsel's billing records suggests the parties exchanged a limited number of discovery requests and only the parties were deposed. (*See, e.g.*, Invoice, annexed to Cardinale Decl. as Ex. 1 ("Cardinale Decl. Ex. 1") at 2–6, Docket Entry No. 113-1.)

9

2022) ("For 'garden variety' [s]ection 1983 cases of limited complexity, courts in the District have awarded partners hourly rates in the middle of the $300–$450 range."); *Torcivia v. Suffolk County*, 437 F. Supp. 3d 239, 252–53 (E.D.N.Y. 2020) (reducing counsel's hourly rate where "[t]he complexity of [the] matter [was] limited").

The Court finds that a reasonable plaintiff would pay a rate of $425 per hour for Mr. Cardinale's and Mr. Hueston's services and reduces their hourly rates accordingly. *See Andrews v. City of New York*, No. 14-CV-4845, 2015 WL 2237060, at *3 (E.D.N.Y. May 12, 2015) (concluding that hourly rate of $425 "reasonably reflec[ed] Cardinale's many years of experience and the pertinent rate for such services in this district"); *Munoz v. Manhattan Club Timeshare Ass'n*, No. 11-CV-7037, 2014 WL 4652481, at *4 (S.D.N.Y. Sept. 18, 2014) (applying hourly rate of $400 because "Mr. Cardinale is an experienced civil rights attorney with almost twenty years in practice"); *see also Martinez v. City of New York*, 330 F.R.D. 60, 71 (E.D.N.Y. 2019) (applying hourly rate of $425 for attorneys who had "collectively litigated over 716 civil rights cases in this district and in the Southern District of New York, and both ha[d] extensive trial experience as detailed in their papers"); *Sass v. MTA Bus Co.*, 6 F. Supp. 3d 238, 263 (E.D.N.Y. 2014) (applying hourly rate of $425 for attorney with "33 years of experience trying approximately 500 employment discrimination cases"); *Luca v. County of Nassau*, 698 F. Supp. 2d 296, 301–02 (E.D.N.Y. 2010) (applying hourly rate of $400 for attorney with "25 years' experience" who had "handled roughly 180 [civil rights] cases in the Eastern District of New York").

### 2. Izabel Garcia

Plaintiff seeks an hourly rate of $450 for Ms. Garcia. Ms. Garcia is an experienced lawyer who has been practicing law in the state of New York for approximately thirty-three years, and in the Southern and Eastern Districts of New York for approximately twenty-one

10

years.  (Decl. of Izabel Garcia in Supp. of Pl.'s Mot. ("Garcia Decl.") ¶ 4, Docket Entry No. 115.)  In 2001, Ms. Garcia started her own practice "concentrating in criminal law and civil rights litigation" and has represented "plaintiffs in police misconduct cases in New York State Supreme Court and in the United States District Courts for the Eastern and Southern Districts of New York."  (*Id.* ¶¶ 6–8.)  Ms. Garcia's experience in civil practices includes "drafting complaints, motion practice and taking depositions of police officers and other witnesses concerning police misconduct."  (*Id.* ¶ 9.)  While in private practice Ms. Garcia "was retained as co-counsel to Richard Cardinale, Esq. in approximately twenty-five civil rights cases."  (*Id.* ¶ 11.)

While Ms. Garcia has considerable experience as a criminal and civil litigator, her requested rate is at the top end of rates applied to attorneys of comparable experience.  As with Mr. Cardinale and Mr. Hueston, the Court finds that a reduction to Ms. Garcia's rate is appropriate because of the relatively straightforward nature of this case.  (*See supra* at 9–10.)  In addition, Ms. Garcia's declaration does not describe her experience litigating civil rights claims in sufficient detail to warrant awarding her requested rate.  Though Ms. Garcia states that her civil practice "included representing plaintiffs in police misconduct cases in . . . the United States District Court[] for the Eastern . . . District[] of New York," her declaration does not give insight into the extent of that practice other than the "approximately twenty-five civil rights cases" in which she was co-counsel to Mr. Cardinale.[7]  (Garcia Decl. ¶¶ 8–11.)

Under these circumstances, the Court finds that a reasonable plaintiff would pay a rate of

---

[7] A search for Ms. Garcia on the Court's Case Management/Electronic Files System suggests Ms. Garcia has appeared in approximately 75 civil cases in the Eastern District of New York.  By comparison, a similar search as to Mr. Cardinale and Mr. Hueston suggests they have appeared in 413 and 374 civil cases, respectively.

11

$375 per hour for Ms. Garcia's services and reduces her rate accordingly. *See Saleh*, 2022 WL 4078150, at *32–33 (applying rate of $300 per hour for an attorney who had "been practicing law since 1999" due to his "lack of experience in civil rights cases"); *Smith*, 2022 WL 939711, at *5 (applying hourly rate of $350 for attorney who had been practicing since 1999 and had "handled over 75 cases involving police misconduct claims, over 50 of which were litigated in the Eastern and Southern Districts of New York"); *Mary Jo C. v. Dinapoli*, No. 09-CV-5635, 2014 WL 7334863, at *6–7 (E.D.N.Y. Dec. 18, 2014) (applying hourly rate of $350 to attorney with thirty years of experience but did not have co-counsel's specific experience "litigating civil rights or discrimination claims in federal court"); *Dowdell v. Imhof*, No. 10-CV-1332, 2012 WL 959474, at *3 (E.D.N.Y. Mar. 19, 2012) (applying hourly rate of $375 for two attorneys who had "been practicing for twenty-five years or longer"); *cf. Gem Fin. Serv., Inc. v. City of New York*, No. 13-CV-1686, 2023 WL 5831129, at *4 (E.D.N.Y. Sept. 8, 2023) ("In civil rights cases, '[t]he highest rates in this district are reserved for expert trial attorneys with extensive experience before the federal bar, who specialize in the practice of civil rights law and are recognized by their peers as leaders and experts in the field.'" (alteration in original) (quoting *Hugee v. Kimso Apts., LLC*, 852 F. Supp. 2d 281, 300 (E.D.N.Y. 2012))).

    **ii.   Hours reasonably expended**

Plaintiff argues that the contemporaneous time records from her attorneys support the number of hours they spent on "discovery; several court conferences, settlement conferences and mediation; depositions of three plaintiffs and four defendants; opposing [D]efendants' motion for summary judgment and motion for reconsideration; drafting [P]laintiff's motion *in limine* and opposing [D]efendants' motion *in limine*; preparation of a joint pretrial order; drafting proposed jury instructions and voir dire; and trial preparation." (Pl.'s Mem. 4.)

Defendants argue that "a significant reduction" in the hours expended "is warranted" because: (1) Plaintiff's counsel should not be compensated for any work completed before the August 25, 2016 settlement agreement between Shontay and Jamel Loftin and Defendants, as counsel already received fees as part of that agreement, (Defs.' Opp'n 6–7); and (2) the hours billed after August 25, 2016, are "excessive and duplicative," (*id.* at 8–10). As to hours billed after August 25, 2016, Defendants challenge the time counsel spent on: (1) opposing Defendants' motion for summary judgment (approximately 60 combined hours by Mr. Cardinale and Ms. Garcia); (2) drafting and opposing motions *in limine* (approximately 46 combined hours by Mr. Cardinale and Mr. Hueston); (3) drafting Plaintiff's portion of the joint pre-trial order (approximately 9 hours by Mr. Cardinale); (4) drafting a short motion to quash a trial subpoena and reading Defendants' opposition to the motion (approximately 4.5 hours by Mr. Cardinale); (5) reviewing the docket (approximately 5.5 hours by Mr. Hueston); and reviewing deposition transcripts between 44 and 104 pages in length (approximately 23 hours by Mr. Hueston). (*Id.* at 8–9.) Defendants also challenge the fact that multiple attorneys appeared at conferences or depositions. (*Id.*) Defendants argue that all post-settlement hours should be reduced by a fixed percentage — thirty percent for Mr. Cardinale, twenty percent for Mr. Hueston, and fifteen percent for Ms. Garcia. (*Id.* at 10.)

In reviewing a fee application, courts may review the expenditure of hours submitted by counsel, and adjust to a reasonable amount, as determined in light of the particulars of the case. *See Agudath*, 2023 WL 2637344, at *2 ("When reviewing a fee application, a district court should 'examine[ ] the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case,' and if it 'concludes that any expenditure of time was unreasonable, it should exclude these hours' from the fee calculation." (alteration in

13

original) (quoting *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997))); *Gayle v. Harry's Nurses Registry, Inc.*, No. 07-CV-4672, 2013 WL 5502951, at *7 (E.D.N.Y. Aug. 26, 2013) ("In reviewing a fee application, the district court must examine the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case."), *report and recommendation adopted*, 2013 WL 5502950 (E.D.N.Y. Sept. 30, 2013). To obtain an award of attorneys' fees, a petitioner must provide contemporaneous time records that support the date work was performed, the nature of the hours expended, and the work done. *See Raja v. Burns*, 43 F.4th 80, 86–87 (2d Cir. 2022) (party seeking attorneys' fees "must prepare and submit to the district court contemporaneous time records of the work performed, specifying the date, the hours expended, and the nature of the work done" (internal quotation omitted)); *Scott v. City of New York*, 643 F.3d 56, 57 (2d. Cir. 2011) ("[A] district court's 'personal observation' of an attorney's work is not by itself a sufficient basis for permitting a deviation and awarding fees in the absence of contemporaneous records."); *Pilitz v. Inc. Vill. of Freeport*, No. 07-CV-4078, 2011 WL 5825138, at *4 (E.D.N.Y. Nov. 17, 2011) (noting that "the party seeking attorney[s'] fees [must] submit sufficient evidence to support the hours worked and the rates claimed" and "must support its application by providing contemporaneous time records that detail 'for each attorney, the date, the hours expended, and the nature of the work done'" (quoting *Carey*, 711 F.2d at 1148)). "In determining the number of hours reasonably expended on a case, a district court properly excludes documented hours that are 'excessive, redundant, or otherwise unnecessary.'" *Raja*, 43 F.4th at 87 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "[I]n dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from

14

a fee application.'" *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (quoting *Carey*, 711 F.2d at 1146); *see also Raja*, 43 F.4th at 87 (similar).

### 1. Pre-settlement hours

It is within a district court's discretion to reduce requested hours expended to account for efforts that may have benefitted other plaintiffs who are not subject to the Rule 68 offer of Judgment. *See Tomassini v. FCA US LLC*, No. 21-2785, 2023 WL 2194016, at *2 (2d Cir. Feb. 24, 2023) (upholding award of attorneys' fees to lead plaintiff in class action who accepted Rule 68 offer of judgment where district court excluded certain hours that were not spent on pursuing lead plaintiff's claims). Under such circumstances, a district court may "calculate [a] percentage reduction by reviewing the time records and excluding . . . specific hours that either were not solely related to [a plaintiff's] individual claim or involved unclear time records," then "divid[ing] the non-compensable time . . . by the total hours billed." *Id.* In other circumstances, settling plaintiffs have accepted a fixed percentage reduction "to account for the fact that the billed work also benefited the other plaintiffs." *Lema v. Mugs Ale House Bar*, No. 12-CV-2182, 2014 WL 1230010, at *8 (E.D.N.Y. Mar. 21, 2014) (adopting recommendation to apply reductions "in addition to the 25 percent discount the [s]ettling [p]laintiffs voluntarily allow[ed] to account for the fact that the billed work also benefited the other plaintiffs").

Plaintiff should not be awarded fees for services performed on behalf of Shontay and Jamel Loftin, because they are not parties to the Rule 68 offer of judgment and have already recovered fees as to those parties.[8] *Tomassini*, 2023 WL 2194016, at *2 (upholding award of

---

[8] Plaintiff argues the Court cannot consider the settlement agreement between Shontay and Jamel Loftin and Defendants because the agreement states that it "shall not be admissible in, nor is it related to, any other litigation or settlement negotiations, except to enforce the terms of th[e] agreement." (Settlement Agreement 3, annexed to Defs.' Opp'n as Ex. A ("Ex. A"),

15

fees where district court calculated percentage reduction based on hours not spent on matters not solely related to plaintiff's claim). The Court reduces the pre-settlement hours by a percentage to be calculated by dividing the non-compensable hours by the total hours billed. Non-compensable hours include time entries billed on or before August 25, 2016 that are either unclear or not related only to Tanya Loftin. For Mr. Cardinale, the Court finds 131 billing entries accounting for 69.4 hours of non-compensable time. For Ms. Garcia, the Court finds 14 billing entries accounting for 15.98 hours of non-compensable time. By dividing the total non-compensable hours (85.38 hours) by the total hours billed (312.33 hours), the Court calculates a percentage reduction of 27% to be applied to the pre-settlement hours billed by Mr. Cardinale and Ms. Garcia. Applying the 27% reduction to the 78.47 hours Mr. Cardinale billed on or before August 25, 2016, results in 57.28 hours of compensable pre-settlement time. (Invoice, annexed to Cardinale Decl. as Ex. 1 ("Cardinale Decl. Ex. 1") at 1–6, Docket Entry No. 113-1.) Applying the 27% reduction to the 16.27 hours Ms. Garcia billed on or before August 25, 2016,

---

Docket Entry No. 120-1; *see also* Pl.'s Reply at 2–3 ("Defense counsel drafted the stipulation with a provision that states that the stipulation is inadmissible for any purpose other than to enforce the agreement.").) "Courts have differed over whether or to what extent the Federal Rules of Evidence govern disputes over attorneys' fees," and the Second Circuit has not ruled on the question definitively. *Rein v. Socialist People's Libyan Arab Jamahiriya*, 568 F.3d 345, 352 (2d Cir. 2009) (assuming without deciding that "in determining questions of attorneys' fees, courts may employ hearsay within reasonable limits and have considerable discretion over adherence to Federal Rules" but noting that "the rule forbidding . . . use of settlement negotiations is a matter of fundamental policy"); *see also Dagostino v. Computer Credit, Inc.*, 238 F. Supp. 3d 404, 415 (E.D.N.Y. 2017) (similar). The language Plaintiff cites is designed to prevent a party from using the agreement to prove the merits of a subsequent litigation. Defendants do not seek to prove the merits of a litigation but rather seek to enforce the terms of the agreement as to attorneys' fees for Shontay and Jamel Loftin. The Court considers the agreement for that limited purpose. *See Orakwue v. City of New York*, No. 11-CV-6183, 2013 WL 5407211, at *7 (E.D.N.Y. Sept. 25, 2013) (stating that a settlement agreement could bar plaintiff's claims where similar language was "designed to prevent the parties from using the Settlement Agreement to prove the merits of a subsequent litigation, not to prevent the parties from enforcing the Settlement Agreement, as defendants [sought to do]").

16

results in 11.88 hours of compensable pre-settlement time. (Invoice, annexed to Garcia Decl. as Ex. 1 ("Garcia Decl. Ex. 1") at 1, Docket Entry No. 115.)

### 2. Post-settlement hours

As to hours worked after the settlement, Plaintiff has provided sufficiently detailed records to justify the number of hours billed to this case. In addition, the number of hours worked after August 25, 2016 — 152.83 hours for Mr. Cardinale, 56.60 hours for Mr. Hueston, and 8.12 hours for Ms. Garcia — is not excessive. During the relevant time period — August 25, 2016, and final billing entries on March 9, 2023 — the parties, among other things, briefed a motion for summary judgment and a related motion for reconsideration, appeared at conferences with the Court, briefed motions *in limine*, prepared for and participated in mediation, and prepared for trial. A total of approximately 217 hours is a reasonable amount of time to complete these and other tasks. *See Ortiz*, 843 F. App'x at 359 (upholding district court's conclusion that a reduction to 340 hours billed was appropriate for a "'garden-variety' . . . litigation, which involved many claims that were dismissed before trial, required three depositions, and yielded a one-week trial"); *see also Cooper v. Dieugenia*, No. 14-CV-6136, 2018 WL 2103200, at *4 (E.D.N.Y. May 7, 2018) (awarding fees for approximately 388 hours of work spread across three attorneys for a "simple" case that "involved only minimal . . . summary judgment briefing by Plaintiff, three short depositions, fewer than one hundred pages of paper discovery, and a four-day jury trial involving only six witnesses"). Accordingly, the Court declines to reduce the hours expended after August 25, 2016, for Mr. Cardinale, Mr. Hueston, and Ms. Garcia.

### iii. Lodestar calculation

The lodestar is "calculated as the product of the reasonable number of hours worked and a reasonable hourly rate." *Agudath*, 2023 WL 2637344, at *1 (citing *Arbor Hill*, 522 F.3d at

17

183–84). Accordingly, consistent with the analysis above, the Court calculates the lodestar as follows:

| Billing Professional | Total Hours | Adjusted Hours | Hourly Rate | Amount |
|---|---|---|---|---|
| Richard Cardinale | 231.30 | 210.11 | $425 | $89,296.75 |
| Michael Hueston | 56.60 | 56.60 | $425 | $24,055.00 |
| Izabel Garcia | 24.43 | 20 | $375 | $7,500.00 |
| **TOTALS** | 312.32 | 281.06 | | $120,851.75 |

### III. Conclusion

For the reasons stated above, the Court grants in part and denies in part Plaintiff's motion. The Court awards Plaintiff attorneys' fees in the amount of $120,851.75.

Dated: December 28, 2023
      Brooklyn, New York

SO ORDERED:

     S/MKB
MARGO K. BRODIE
United States District Judge